**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SUSAN L. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-CV-1903 |
| | ) | |
| vs. | ) | |
| | ) | District Judge J. Nicholas Ranjan |
| FREEDOMROADS, LLC, | ) | |
| | ) | Magistrate Judge Christopher B. Brown |
| Defendant. | ) | |

**MEMORANDUM ORDER**

This employment-discrimination case was referred to Magistrate Judge Christopher B. Brown for proceedings in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and the Local Rules of Court applicable to Magistrate Judges.

Before the Court is a Report & Recommendation filed by Judge Brown, recommending that Defendant FreedomRoads, LLC's summary-judgment motion be granted in part and denied in part. FreedomRoads filed four objections, to which Plaintiff Susan Johnson responded. On *de novo* review, the Court overrules the objections and adopts the R&R in full. Addressing each objection, in turn:

First, the Court finds there is sufficient evidence of pervasive discrimination for the hostile-work environment claim to proceed. This includes: Mr. Fusco's unsolicited sexualized comment that he would perform mouth-to-mouth on Ms. Johnson, and send a picture to her husband; comments by Mr. Rifendifer and Mr. Hoover reflecting sexist attitudes about women that were made in front of Ms. Johnson; testimony from coworkers corroborating the use of demeaning language toward women, including Ms. Johnson; evidence reflecting a culture of tolerance for such behavior, which included threats of violence directed at women, and calling female employees "stupid" or "bitch"; and conduct by the FreedomRoads's General Manager that multiple employees reported as vulgar and sexually inappropriate, particularly about women. ECF 46 at ¶¶ 76–88.

Some of these comments were directed at Ms. Johnson; others at women around her. But as a whole, they reflect a pervasive and hostile-work environment that adversely impacted Ms. Johnson, well beyond the off-hand remarks that usually don't survive summary judgment. *See Brown-Baumbach v. B&B Auto., Inc.*, 437 F. App'x 129, 133 (3d Cir. 2011) (finding that frequent sex-related offensive comments and behavior over months weren't just "'ordinary tribulations of the workplace'" even while acknowledging that "not every sexual comment, action or joke creates a hostile work environment" and "'[t]he mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate Title VII liability.'") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) and *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir.2001)).

Second, there is sufficient evidence of intentional discrimination and pretext on the disparate-treatment claim to proceed to a jury. FreedomRoads argues that evidence of the April 2023 schedule change isn't enough to support an inference of intentional discrimination. ECF 49 at 4–6. That stops short of what Judge Brown found. He found that there was enough evidence to establish disparate treatment and pretext, including that: "FreedomRoads assigned her a substantially more onerous schedule than her male colleagues. In less than a month after the schedule change, when she did not meet the demands of a 67-hour, seven-days-a-week work schedule, Johnson was terminated after working as a top performer for five years." ECF 48 at 26. FreedomRoads's objection in this regard is more of a dispute over this evidence, which is for the jury to resolve.

Third, FreedomRoads argues that it provided Ms. Johnson with religious accommodation, so her Title VII religious-accommodation claim fails. ECF 49 at 6–7. FreedomRoads points to a text message, where Ms. Johnson appears to acknowledge that management told her she could "file paperwork thru HR to take Sundays off for religious reasons." *Id.* at 6. But as Judge Brown correctly found, the

record on this issue was as clear as mud.  ECF 48 at 36–38.  All the evidence reflects is that Ms. Johnson asked for an accommodation, the one reasonable accommodation on the table (a later start time on Sunday) was never reduced to writing, and FreedomRoads's regional manager couldn't confirm it was even offered.  ECF 46 at ¶¶ 26–28, 45–47; ECF 42-3 at 9:8–10:5; *see* ECF 48 at 37–38.  At a minimum, there are enough disputes on this issue for the jury to decide.

Fourth, the Court agrees with Judge Brown that the internal verbal complaints and email to the CEO were protected activity, sufficient to support the retaliation claim on the basis of sex discrimination.  *See* ECF 48 at 39–41.  Further, emailing the CEO to complain about discrimination and then being fired nine days later is suggestive timing to raise an inference of pretext.[1]  ECF 46 at ¶¶ 96, 99; *Qin v. Vertex, Inc.*, 100 F.4th 458, 476–77 (3d Cir. 2024) ("Temporal proximity between the protected activity and the termination can be itself sufficient to establish a causal link[,]" particularly if "within the three-month range to be unusually suggestive of retaliatory motive.") (cleaned up; quotations omitted); *see* ECF 48 at 41–43.

AND NOW, this 29th day of July, 2026, it is **ORDERED** that Defendant's objections are **OVERRULED**.  The Report & Recommendation is **ADOPTED** as the opinion of the Court.

BY THE COURT

/s/ *J. Nicholas Ranjan*
United States District Judge

---

[1] FreedomRoads argues that the timeline here supports its arguments.  It says that the April schedule change was implemented April 1, 2023, and it wasn't until after Ms. Johnson refused to comply with the schedule (a few weeks later) that she emailed the CEO.  ECF 49 at 8–9.  This argument though just repackages FreedomRoads's non-discriminatory reason—that Ms. Johnson was terminated for not complying with the schedule.  As noted above, there is sufficient evidence to suggest that this was implausible and thus pretextual.